

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 2 1 2003

**CLERK, U.S. DISTRICT COURT**
By _____
Deputy

| | | |
|---|---|---|
| YOLANDA ALLEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3-02 CV 1764 P |
| | § | |
| CENTER OPERATING COMPANY, | § | |
| L.P. AND COLETTE VALLOT, | § | |
| | § | |
| Defendant. | § | |

## CENTER OPERATING COMPANY'S MOTION FOR SUMMARY JUDGMENT

### I.
### SUMMARY OF MOTION

Plaintiff Yolanda Allen brought this lawsuit against her former employer, Center Operating Company, L.P., ("COC") alleging (1) race discrimination; (2) retaliation; and (3) vicarious liability for an alleged assault under the theories of *respondeat superior* and ratification. Allen's claim of race discrimination is based on her belief that her salary was discriminatory as compared to that of a Caucasian employee. Allen's retaliation claim is based solely on her termination and is founded upon her belief that she was terminated because she made a comment about certain employees who were designated as part-time, and yet, at times, were working over forty (40) hours in a week. Allen also claims to have been assaulted by Colette Vallot and that COC somehow condoned the alleged assault by retaining Ms. Vallot as an employee.

Because, in all instances, Allen fails to state actionable claims, COC is entitled to summary judgment. Moreover, COC has carried its burden to articulate a legitimate, nonretaliatory reason for Allen's termination, and no evidence of pretext exists.

## II.
## UNDISPUTED FACTS

COC offers the following outline of Plaintiff's allegations and facts for the purposes of summary judgment only, and only to show that even accepting Allen's allegations as true, her claims still fail as a matter of law.

### A.    BACKGROUND

1.    COC is a limited partnership between the ownership of the Dallas Stars and the ownership of the Dallas Mavericks. COC was established to develop and construct AAC and to operate AAC once completed. COC also operated Reunion Arena for a period of time.[1] Craig Courson, Executive Vice President and Chief Financial Officer, hired Colette Vallot—an African American female—as COC's Director of Human Resources.

### B.    ALLEN'S EMPLOYMENT

2.    Yolanda Allen began her employment with COC in September 2001, as a part-time Event Receptionist.[2] Thereafter, Vallot and Lance Lankford, COC's General Counsel, interviewed Allen to be their administrative assistant.[3] Ultimately, Ms. Vallot offered Allen the job and she became a full-time employee as of October 2001.[4] Allen's starting salary in this capacity was $32,000 per year.[5]

---

[1]    Courson Dec. ¶3; App. 216-218.
[2]    Pl. Dep. 11:21-12:5; App. 004.
[3]    Pl. Dep. 12:13-17; App. 004.
[4]    Pl. Dep. 13:2-14:3; App. 004-005.
[5]    Pl. Dep. 14:24-15:6; App. 005.

3. On February 18, 2002, Allen was promoted to the position of Personnel Analyst, reporting primarily to Vallot but still providing assistance to Mr. Lankford.[6] At that time, Allen's salary was increased to $40,000 per year, and it remained the same until her termination on May 16, 2002.[7]

4. Throughout her employment, Allen and Vallot had several conversations regarding Allen's arrival and departure time.[8] In these conversations, Vallot made it clear to Allen that she was to arrive at work by 9:00 a.m.[9] According to Allen's own testimony, Vallot informed her on several occasions that she needed to be at work by 9:00 because COC had people coming into the HR department with questions and the Human Resources representatives needed to be there to answer them.[10] Despite these numerous conversations, and despite Allen's commitment to be at work by 9:00, Allen was late for work on several occasions.[11]

5. On May 13, 2002, Allen was again was late for work.[12] Because of Allen's continued tardiness, Vallot prepared a written warning for Allen and met with Allen to discuss the warning.[13] Allen does not dispute any of the facts as contained in the Written Warning—namely, that she was consistently late for work and that she took lengthy lunches.[14] Despite ostensibly agreeing with the contents of the written warning, Allen refused to sign the document.[15] During this meeting, Allen became angry with Vallot and shouted: "F_ck you" and

---

[6] Pl. Dep. 25:25-26:4; App. 007-008.
[7] Pl. Dep. 12:11-12, 25:25-26:10; App. 004, 007-008.
[8] Pl. Dep. 22:5-10; App. 007.
[9] Pl. Dep. 17:17-22, 18:13-19:14, 23:11-24:25; App. 005-007.
[10] Pl. Dep. 24:19-25; App. 007.
[11] Pl. Dep. 24:1-12, 170:19-172:16; App. 007, 044.
[12] Pl. Dep. 170:19-180:8; App. 044-046; *see also* Pl. Dep. Ex. 5, "Written Warning"; App. 099.
[13] Pl. Dep. 168:2-169:8; App. 043.
[14] Pl. Dep. 170:19-171:17; App. 044.
[15] Pl. Dep. 171:19-172:2; App. 044.

"I don't know what the f_ck you expect from me".[16]  Although she now claims that she cannot recall the details of the meeting, Allen admits that she could have used profanity with Vallot, and admits that she could have, upon her exit, opened the door so hard that it hit the back of the wall.[17]  As Allen stormed out, Vallot warned Allen that she was treading on thin ice.[18]  Allen responded that she did not "give a damn."[19]

6.      Because of Allen's insubordination, Vallot recommended to Mr. Courson that Allen's employment with COC be terminated and Courson concurred.[20]  Allen was out of the office the next two days.  When she returned Thursday morning, Vallot informed Allen that her employment with COC was terminated.[21]

7.      Following this meeting, Allen went to her desk to retrieve her personal things.[22]  Allen alleges that Vallot followed her and assaulted her by pushing her and grabbing at her identification badge.[23]  There were no witnesses to the alleged push.[24]  One employee now alleges to have seen Vallot grab Allen's identification badge.  Allen claims that COC condoned this alleged assault solely because Vallot remained employed by COC until December, 2002.[25]

8.      On May 20, 2002, Allen filed her charge of discrimination with the EEOC.[26]  Allen did not mark the "retaliation" box on the charge and included no allegations that she believed her termination to have been retaliation based on conduct protected by Title VII.[27]

---

[16]    Vallot Dep. 103:11-19; App. 170.
[17]    Pl. Dep. 174:3-22, 172:20-24; App. 045, 044.
[18]    Vallot Dep. 106:2-3; App. 171.
[19]    Vallot Dep. 106:1-4; App. 171.
[20]    Vallot Dep. 110:23-111:4; App. 172.
[21]    Pl. Dep. 180:18-181:24; App. 046.
[22]    Pl. Dep. 181:19-24; App. 046.
[23]    Pl. Dep. 182:1-20; App. 047.
[24]    Pl. Dep. 185:3-15; App. 047.
[25]    Pl. Dep. 189:15-24; App. 048.
[26]    See Pl. Dep. Ex. 10; App. 110.
[27]    See Pl. Dep. Ex. 10; App. 110.

Instead, Allen only marked the "race" box.[28]  Moreover, Allen's charge does not include any allegations relating to Allen's salary.[29]

## C.   SCOTTIE COX'S EMPLOYMENT

9.     Allen now alleges race discrimination based on the fact that COC paid Scottie Cox a higher salary than Allen.[30]  Cox was hired on March 28, 2002, to work with COC's Human Resources Information System and benefits administration.[31]   Cox's title is HRIS/Benefits Specialist.  In order to fill this position, COC offered Cox an annual salary of $50,000.[32]

10.    Courson considered the HRIS/Benefits Specialist position to be an elevated position that included greater responsibility and need for specialization than the position held by Allen.[33]  Cox's salary reflects her impressive thirteen years of HR and benefit-related experience, the exact specialization in benefits sought by COC.[34]  Moreover, Cox had been making $56,000 per year at her previous employer.[35]  COC tried to offer Cox a competitive salary that did not amount to too significant of a pay cut.[36]

## III.
## SUMMARY OF WHY ALLEN'S CLAIMS FAIL AS A MATTER OF LAW

COC is entitled to summary judgment on all of Allen's claims.  For the reasons stated below, the authority cited in COC's Brief filed contemporaneously herewith, and the evidence contained in the accompanying Appendix, all three of Allen's claims fail as a matter of law.

---

[28]    *See* Pl. Dep. Ex. 10; App. 110.
[29]    *See* Pl. Dep. Ex. 10; App. 110.
[30]    Pl. Dep. 87:25-88:3; App. 023.
[31]    Cox Dep. 25:13-14, 24:15-17; App. 128.
[32]    Cox. Dep. 33:18-22; App. 130.
[33]    Courson Dep. 40:24-41:3, 42:4-8, 44:7-14; App. 206-07.
[34]    Courson Dep. 40:24-12; App. 206.
[35]    Cox. Dep. 46:12-17; App. 133.
[36]    Courson Dec. ¶7; App. 217.

First, Allen's claim of racial discrimination based on her salary is not properly before this Court because Allen never exhausted her administrative remedies as to this claim.[37] Allen's charge alleges only that she was terminated because of her race and makes no mention of her salary.[38] Allen's claim also fails because she cannot identify any similarly situated COC employees that were treated more favorably than she under nearly identical circumstances. Allen compares herself to Scottie Cox, COC's Benefits/HRIS Specialist.[39] However, Cox is not a proper comparator because she held a different position, had different job duties, and had thirteen (13) years of prior Human Resources experience (as compared to Allen's zero years of the same).[40] Furthermore, Cox was hired because she possessed benefits expertise that COC sought and Courson planned for the HRIS/Benefits Specialist to have greater responsibility and technical expertise than that needed for Allen's position.[41] Moreover, Courson considered the salary appropriate given the fact that Cox was having to take a significant pay cut from her previous employer to accept COC's offer.[42]

Because she has no real evidence of racial discrimination, Allen subjectively proclaims that COC paid all black employees less than it paid its white employees.[43] However, Allen has no evidence to support her global condemnation of COC's salary structure. Allen's belief based on simply eye-balling a few salaries without even noting the positions held or other factors that effect salary is not proper summary-judgment evidence.[44] Moreover, COC's treatment of other employees is not at issue in this case.

---

[37]     *See* Pl. Dep. Ex. 10; App. 110.
[38]     *See* Pl. Dep. Ex. 10; App. 110.
[39]     Pl. Dep. 87:25-88:3; App. 023.
[40]     Courson Dec. ¶ 7; App. 217.
[41]     Courson Dec. ¶ 7; App. 217.
[42]     Courson Dec. ¶ 7; App. 217.
[43]     Pl. Dep. 52:5-10; App. 014.
[44]     Pl. Dep. 54:17-55:4, 52:11-19; App. 15, 14.

Second, Allen's retaliation claim also fails because she never exhausted her administrative remedies as to this claim.[45] Even if she had, no evidence exists to support her claim. COC terminated Allen's employment for legitimate, non-retaliatory reasons. Because of Allen's repeated tardiness her supervisor gave her a written warning. In response to this written warning, Allen shouted profanities at her supervisor and stormed out of the meeting.[46] Based on this clearly insubordinate conduct, COC determined to terminate Allen's employment.[47] Allen cannot show that this reason is a pretext for illegal retaliation. Moreover, Allen's retaliation claim also fails because she did not engage in any activity protected under Title VII. Allen merely mentioned a concern she had about a practice that she (wrongly) believed was contrary to wage-and-hour laws.[48] Thus, Allen alleges no conduct protected by Title VII. Moreover, Allen offers no evidence that but for her comment, she would not have been terminated. As such, COC is entitled to summary judgment on Allen's retaliation claim.

Finally, Allen claims that COC is liable under the theories of *respondeat superior* and ratification for Vallot's alleged assault. However, even if the assault occurred precisely as Allen testified, it is clear that Vallot was neither acting in furtherance of COC's business interests, nor working for the purpose for which she was hired. Furthermore, Allen bases her ratification theory of liability solely on the fact that COC retained Vallot as its employee after the alleged incident.[49] However, Vallot vehemently denies the incident and COC has no way to definitively determine who is telling the truth. Moreover, mere retention is not sufficient to establish ratification and, as such, Allen's claim fails as a matter of law.

---

[45]   *See* Pl. Dep. Ex. 10; App. 110.
[46]   Pl. Dep. 172:25-173:3; App. 044; Vallot Dep. 105:12-24; App. 171.
[47]   Pl. Dep. 180:25-181:10; App. 046.
[48]   Pl. Dep. 158:17-24; App. 041.
[49]   Pl. Dep. 189:22-190:2; App. 048-049.

Absent factual evidence to support her claims and without legal precedent to support her theories of liability, all of Allen's claims must fail as a matter of law. Ultimately, Allen cannot show pretext with regard to COC's legitimate, non-retaliatory reason for her termination and, as such, COC moves this court to grant its Motion for Summary Judgment.

## IV.
## BRIEF AND APPENDIX IN SUPPORT OF MOTION

COC's Motion is supported by a Brief that sets forth arguments and authorities. COC also files, contemporaneously with this Motion and Brief, an Appendix containing COC's Summary-Judgment Evidence.

## V.
## CONCLUSION

COC has provided this Court with competent summary judgment evidence negating elements of Plaintiff's claims. COC has also provided this Court with a legitimate, nonretaliatory reason for Allen's termination for which she can provide no evidence of pretext. As Plaintiff cannot produce summary judgment evidence to support certain elements of her claims, all of Plaintiff's claims should be dismissed.

Respectfully submitted,

M. Scott McDonald
Texas State Bar No. 13555505
Ellen L. Perlioni
Texas State Bar No. 00794155
Brian D. Johnston
Texas State Bar No. 24032471

LITTLER MENDELSON
A Professional Corporation
2001 Ross Avenue, Suite 2600
LockBox 116
Dallas, Texas 75201.2931
214.880.8100
214.880.0181 (Fax)

ATTORNEYS FOR DEFENDANT
CENTER OPERATING COMPANY, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2003, a true and correct copy of the foregoing was sent via hand delivery to:

John E. Wall, Jr.
Law Offices of John E. Wall, Jr.
5728 Prospect Avenue, Suite 2001
Dallas, TX 75206-7284

M. Scott McDonald
Ellen L. Perlioni
Brian D. Johnston

**DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT – Page 9**
DALLAS:113727.1 044510.1003